All rise. The Illinois Appellate Court Fifth Division is now in session. The Honorable Justice Maureen Harris is presiding. Please be seated. Good afternoon to all of you and welcome to the First District Illinois Appellate Court Fifth Division. I think we have one case on the call today. Clerk, will you call the case, please? 129-472 Toriano Barnes v. Thomas J. Dart I would ask the lawyers who are going to be arguing in this case to approach the bench and state your name, please, who you represent, and spell your last name as well, please. Microphone. There's a mic over there, yeah. That's okay. One at a time. Good afternoon. Good afternoon. Nicolette Haynes, Counsel for Appellant Toriano Barnes. And the spelling of your last name again? That's my last name. That's H-A-I-N-E-S. Thank you. Thank you. Good afternoon. Assistant State's Attorney Rebecca Guest, G-E-S-T, on behalf of Sheriff Dart of Cook County. Thank you. Good afternoon. Assistant State's Attorney Lyle Henretty, H-E-N-R-E-T-T-Y, on behalf of the Cook County Sheriff's Merit Board. All right. Will both of you, State's Attorneys, be arguing today? I believe so. Minimal on my part. Okay. So will someone do, you're going to trade off then your time frame? What we were thinking, Your Honors, and maybe this can be addressed ahead of time, is I was just going to answer any questions because I dealt with the jurisdictional issue and then see the rest of my time to my co-defendant. Well, that's up to you. So we'll have to see how the questioning goes. So thank you very much. You have 20 minutes, each one of you know, for your initial presentation. Do you want to save some money for your rebuttal, for some time for your rebuttal? I'd like to reserve two minutes. Two? Excellent. All right. Very well. Please be seated. And we'll begin with the appellant. Again, good afternoon, Ms. Hayes. Good afternoon, Your Honors, and may it please the Court. My name is Nicolette Haynes, and I represent the appellant, Toriano Barnes. This case involves the Cook County Sheriff's Board termination decision of Correctional Officer Toriano Barnes. In August of 2016, Barnes and numerous members of Barnes' family appeared at a source of bond hearing for Leo Draper where Barnes testified that he worked secondary employment from January through May 2016. The Board fired him for not otherwise disclosing his secondary employment in addition to statements that he made as the Board deemed those to be untruthful related to the length of time he worked that second job and as far as the number of times that he contacted his cousin, Leo Draper. Counsel, putting aside the issue of whether it's five months versus one month, don't we have precedents that hold that it's a valid basis to fire a Correctional Officer for having undisclosed secondary employment? Your Honor, that is correct. The Roman case deems that just the mere failure to disclose just secondary employment on its own is not sufficient for good causes for its termination. Is there anything in the record that would reveal or infer that the Board found that the difference of the time in terms of the testimony was somehow dispositive? Was there an independent reason for terminating him? Lack of candor? As far as, if you will cite to the record, the OPR investigator in this case, the lead investigator, Nicole Pagani, she herself said that Mr. Barnes' testimony concerning the difference of a month or possibly a couple months from January through May was a menial difference. That itself was not enough to warrant a violation of the Sheriff's policy. So do these things usually result in termination if there's only one charge against the person and that's not reporting secondary employment? Does it usually end in termination? It depends on the nature of the secondary employment. In this case, Mr. Barnes was not using anything related to any sort of authority that he had garnered from his employment at the Sheriff's office in order to work the secondary employment. He did not have to carry a weapon. He did not have to wear his uniform. He was wearing a plain clothes shirt that merely just also included the language security. And did he carry a weapon? No, he did not. Did not. Thank you. Did he also, he fraternized with an inmate, right? There was an inmate that he was related to that he had a number of phone calls with and was less than candid about that. Isn't that a significant issue? Your Honor, as far as any sort of relationship with a criminal or an alleged criminal, that would be according to the record. The mayor board cited his connection to his cousin, Leo Draper, that was arrested nearby his residence. He did have bond money for him and he contrived to be transferred to his division where he was being held in the jail, right? Your Honor, that is correct. He did speak with Mr. Draper on the phone. As far as him having knowledge of him being a known criminal prior to his arrest that is unfounded, according to Mr. Barnes' own testimony, he was of the understanding that Mr. Draper was reforming his life. He was working as a full-time barber, working over full-time hours in a given week. He had no idea that... I'm just trying to understand. So you think your position is that the mayor board abused its discretion or didn't have aired, whatever the terminology is, in discharging a law enforcement officer who has this relationship and is actually transferred to the same division? That's somehow appropriate from a law enforcement standpoint? It is our position that from a law enforcement perspective, there's nothing that deemed... There's nothing in the record that shows that Mr. Barnes was doing anything to bring the sheriff's office into ill repute. While it's not an offense to be associated with a criminal, again, he had no knowledge that Mr. Draper was engaging in any sort of criminal activity at the time of his arrest. But he certainly did have knowledge when he was an inmate in the jail where he was working. That's correct. And as far as the phone calls that were an issue, there was an issue as far as the amount of times that he cited to speaking with him on the phone. And initially he said it was possibly one or two, and then he said it could have been more than that. Counsel, do you have a question? I'm sorry. Go ahead. Did he claim that there was retaliation, the termination result of retaliation for his presence at the bond hearing? There is, yes. It is our position that there was... And what evidence do you have of that that's in the record? The fact that Mr. There was nothing at issue as far as Mr. Barnes appearing at that bond hearing. He merely, he went there to provide a source of bond money for his cousin. As far as the retaliation, it is our position that the State's Attorney's Office retaliated against him by bringing this issue to OPR's attention, to the merit board's attention. Okay, so you're saying that's a logical conclusion from his attendance at the bond hearing then? Is that what you're saying? Does it violate any of the rules to be in attendance or provide bond for somebody? It is our position that it does not prohibit activity. I see. Thank you. Counsel, let me ask you about what I'll call the handoff issue, where Mr. Mateo Harris was the hearing officer who actually saw the live witnesses testify at this hearing, and then he leaves the merit board, and Mr. Delacando ended up issuing the recommended decision to the full board. All right. Putting aside that it's rather strange for an administrative agency to have one of its own members be a hearing officer, I've never seen it in 30 years of dealing with administrative law, but I guess this board does that. Okay. You know, this kind of thing, and you raise this as an issue, as an error, but in the legal world, sometimes we have a judge who has a trial. In the middle of the trial, the judge might pass away, and the lawyers would then stipulate to have the trial continue or to have a new judge, the new judge, review the transcript, all right, by stipulation and make a ruling based on the transcript rather than do a two-week trial all over again. How is this somehow different than that? This is completely different because there's no evidence in this case that the board that decided Mr. Barnes's termination actually reviewed any of the record of the proceedings. There's absolutely an e-mail that was cited in the record, I believe. That's a problem, because in normal litigation, what evidence do you have that any judge would have reviewed something? You say, well, you denied my motion for summary judgment, but I don't think you reviewed it. I mean, the judges are presumed to have reviewed the record and make their decision based on what's in front of them. I mean, there's another problem about them not meeting, which we haven't talked about yet, all right. But why is there a problem with Mr. Mateo Harris creating the record, okay, and then Mr. Delacandro making a decision based on that written record, which is what the board's going to be doing anyway? Sure. Well, this is very problematic, as there's no indicia that anyone, if we're looking at the hearing officer that actually heard this matter, officer, or strike that, hearing officer Mateo, there's no evidence that hearing officer Mateo even spoke with any of the board members as far as just her assessment as to the credibility of witnesses as to, I mean, in ordering any sort of fact-finding. So if you look at the order, it looks like just a mere signature page, so it's unclear as to whether or not they reviewed those records. Furthermore, Well, they're presumed to have reviewed the case that's before them for decision, and the order's going to come out with signatures. That's how the orders are issued. I mean, there's another problem. But I think what you're raising here is a valid issue, which is that the person in the position to determine the credibility of witnesses is off the case. That's correct. All right. And is there anything in the paper trail where there shows that Mr. Mateo's made credibility determination based on the body language and the tone of voice and the choice of words through the live witnesses that then somehow got transferred over to the board? Or did he simply close the case and said, I found your advisement, and then he disappeared because he left as a board member? Your Honor, there's no record of hearing officer Mateo's assessment of the case at all. There was no deliberations that were had between the board members relating to these proceedings. This is a direct violation of the Open Meetings Act. Not the fact that they didn't meet, but the fact that they didn't. There was no meeting as far as the deliberation of these proceedings. So, again, no minutes were taken. There was no agenda that was posted. This is problematic because this is in direct violation of the Open Meetings Act. And what's the remedy for that, then? The remedy would be vacate and remand? In this case, we would seek to have this matter remanded back to the board as far as further proceedings. It is our position that this is not a final decision. And obviously the board membership has changed, and the person who heard the testimony is longer there. Are you asking for basically a de novo evidentiary hearing so that someone in the position to determine credibility of these witnesses can actually observe the witnesses? And the board based it on that? Or are you simply asking for it to go back on the record we already built? If this matter could be reviewed de novo, we would seek that as a remedy. Alternatively, if this court does not deem that as a proper remedy, we would also seek that this matter be remanded back to the board at the very least for further proceedings to deliberate as to the record that is before us. Counsel, can I ask you quickly about the sheriff's policy that forbids associating with or joining with any known criminal organization and by an employee if they knew or reasonably should have known of the criminal organization. Now what evidence is there on record that your client knew or reasonably should have known that his cousin was a member of a criminal organization? There's no evidence that he absolutely knew, that he knew that he was even in any regard looked at as a criminal or engaging in any sort of criminal activity. Well, he testified he did not know any of that. He knew he had some criminal convictions but didn't know he was a member of an affiliation. Is that right? That's correct. There's no evidence that he searched him in the secure system. As far as disclosing that, merely having knowledge of someone's criminal past is not sufficient for having to disclose that they are a known criminal offender presently. So again, as the testimony stands, he claimed under oath that he did not know, correct? Correct. And what testimony is there otherwise in the record? The only evidence that I can cite to you this afternoon is the fact that Mr. Draper was arrested near or closely in proximity to Mr. Barnes' residence. He was questioned by federal authorities for 15 minutes. He was never subpoenaed. He never attended any sort of interrogation. Did the judge say, Yes, we knew that he knew that his... There is no evidence of that. Okay, thank you. Thank you. Thank you. Questions? Interested? Okay, thank you very much. Counsel, do you want to sum up for now? I think you might have a couple minutes left. Yeah, do you want to sum up or continue on, please? Sure. In looking at the violation of the Open Meetings Act, I think it is essential to point out again that the Merit Board did not deliberate as far as the record of proceedings goes. The signature page that the Merit Board did execute, that is being done in every Merit Board trial. There is no record of these proceedings. We have no idea what the Merit Board is deliberating. In your estimation, is that violation of the Open Meetings Act, is that a jurisdictional issue? I would argue that it is not a jurisdictional issue. Well, then if it's not, isn't it waived? Because you didn't raise it in your opening brief. I would argue that it's not waived as it goes to Mr. Barnes' constitutional rights protected under the Open Meetings Act under state law. And for that reason, I would argue that it is not a waived issue. Well, the waiver is a voluntary relinquishment of a known right. Forfeiture is a procedural mishap. I mean, could it be considered forfeiture? Possibly. Thank you. Anything further? Counsel, any summing up you'd like to do? Overall, I think the paramount issue in this case is the violation of the Open Meetings Act. There's countless evidence or lack thereof that the Board never deliberated on any of the record of proceedings. From looking at the order, it's a mere signature page. There was no meeting. There was no agenda. They also failed to provide notice of a 48-hour period prior to any such meeting. And the executive director for the Board did confirm that there was no such meeting. So again, I think it is in Mr. Barnes' constitutional interest that this matter be remanded for further proceedings. Thank you, Ms. Haynes. Thank you.  I appreciate your presentation today. Is the opponent ready to proceed here? Yes, Your Honor. You will start, sir? Okay. I will start, yes, thank you. Again, your name for the record. May it please the Court. My name is Lyle Henretty, H-E-N-R-E-T-T-Y, on behalf of the Merit Board. The Merit Board does not take a substantive position on this case other than its original ruling, which is its standard. However, this Court did ask us to brief the jurisdictional issue or potential jurisdictional issue about the Open Meetings Act, which we have done, and we would stand on that brief unless the Court has any specific questions for me today. So you're here to address the Open Meetings issue, and this guest will address the merits of the underlying decision? Correct. All right. Does the Board concede it didn't have – this was, as I recall, this case was resolved during the time of COVID. Is that correct? I believe it was before that. Even before? I think so. Even before, okay. It was before. But you concede that the Board didn't have a meeting at which it – you know, agenda, minutes, posted, public vote, all those things that have been discussed in the supplemental briefing? For the decision on this case, we do, yes. Okay. That being the case, how do we get around our precedents in Balderman, Howe, and Lawrence, which hold that an administrative agency has to not only meet to issue an administrative decision, but the decision itself must be before them? Because I remember in Howe, the problem was we vote to grant the benefits or deny the benefits as a concept, and then somehow this giant decision comes out a month later with everybody's signature on it. How is this different? I understand, Your Honor. It is different in one important way, answering the questions in reverse, which is that there was a written opinion that was circulated prior to signature, and the opinion that was issued was issued after it had been written. All the signatures had been attached. This wasn't a situation where the vote occurred before there was a final decision in play or before the finals had been drafted. So maybe that band-aid helps, but you still have the problem that the Board voted on this by circulating it for signature. Correct, Your Honor. And I would say for purposes today, we would ask that this Court accept the reasoning from the AFSCME case that we cited, which is that ordinarily a violation of the Open Meetings Act does not prevent an administrative decision from being deemed final. The alternative to that, I think, would be to remand the case to the Board for a final vote. And let me ask you the question I asked your opponent about credibility determinations. You've got a situation here where you have a hearing officer because the Board simply doesn't have time to sit and hear every single case. So you've got a hearing officer. Only the hearing officer actually sees these live witnesses testify and can observe their body language, their tone of voice, their mannerisms, their choice of words, all the things that judges do to gauge credibility of a witness and make a determination in the face of conflicting witnesses as to who's telling the truth, who's more likely to be telling the truth. Okay. That was Mr. Mateo Harris. All right, Commissioner Mateo Harris. Okay. He leaves the Board before he can transmit anything to the Board. That transcript then goes to Mr. Delacando, who didn't see any of the witnesses. So the Board has nothing in front of them to determine credibility. And I think if you dig back far enough in the case law, case law teaches that an administrative agency cannot reverse a hearing officer's credibility determinations unless they question the hearing officer, all right, basically in person as to how the hearing officer made those credibility determinations. Why is that not also a problem here? And I think that goes to the measure more for my opponent. Just very briefly, that I would point out again that this is sort of one of those relatively, not on the record that it's rare, but relatively rare occurrences where the person who did the hearing didn't also draft the opinion. And in this case, there were affidavits by all the Board members that they had reviewed the entire transcript. So I agree with Your Honor that they weren't there to physically see and make credibility determinations based on body language, but all the rest of the type of critical determinations they could make based on answers and things like that were something they reviewed prior to that. And going back to my other questions about the lack of a public meeting, is this something the Board, was this case an aberration or is this something how the Board operates? There's nothing in the record on this. I know the Board does now have public hearings for these. There's nothing on the record as to what. And public votes? Public votes, public, I take that as a yes. Public votes are on the agenda, that sort of thing. There's nothing else. I'll cede my time. Thank you. Ms. Guest? May it please the Court, Rebecca Guest, and I represent Sheriff Dart. I will be speaking about plaintiff's administrative review claim, the retaliatory discharge claims, and the administrative due process claim. So as an initial matter. Hang on for a few seconds here while our emergency responders. Oh, very good. Thank you. Continue. As an initial matter, this Court lacked jurisdiction under Rule 304 over this appeal because the Circuit Court never entered findings allowing immediate appeal. Second, this Court should affirm the Circuit Court's findings and Mr. Barnes' termination. Mr. Barnes was a Cook County Sheriff's Office correctional officer. While employed. Can I ask you what was not final about him? I'm sorry. What was not final about him?  Sure. So there are a number of claims in this case. It wasn't just a typical administrative review case. So originally the claims for declaratory relief and retaliatory discharge were dismissed with prejudice. And the mandamus claim was dismissed without prejudice, granting leave to replead. And the Open Meetings Act claim was withdrawn with leave to replead. And that order did not contain any 304A language. And then the case continued and ultimately the ARL was affirmed and the administrative due process claim was satisfied. And in that final order, which ruled that the administrative due process was satisfied and that his termination was proper, that did state that that was a final order and that it was appealable, but it did not discuss the Open Meetings Act and it did not discuss the retaliatory discharge claim. And the judge gave leave to replead those two claims. Did the judge set a time limit for repleading? Yes. And so the retaliatory... And did that time limit pass by the time the other order was entered? No. So to clarify, the retaliatory discharge was dismissed with prejudice. So that was dismissed. The two claims, the Open Meetings Act and the mandamus, there was time given to replead and those claims were never repleaded. A new complaint was never filed in that case. Right. So the plaintiff elected to stand on a dismissal of the claim. That happens all the time. That's correct. But it seems, based on LEVP-VAR, which also talks about Schenwender v. Jupiter Electra, that an order striking a count from a complaint without prejudice is not deemed final. And there still requires the 304A language to allow it to be a final order and appealable. So the Open Meetings Act, which has now come up, which was... Plaintiff did waive that claim, but the court is discussing that, that there was not the 304A. And then the retaliatory discharge claim, which plaintiff may have... Plaintiff did talk about it today. It was not in their reply, but if they're proceeding with it, I don't believe there was 304A language with that. And we did have conversations with plaintiff about it and discuss it, but they did say they wanted to pursue those claims. But we can always bring up jurisdiction on our own. I'm not even sure I understand that. Absolutely. Okay. So, you know, moving on to the substance of the administrative review claims. While Mr. Barnes was employed, he... The record is clear that his cousin, who was a gang member and a known felon, was arrested by federal agents outside of his house. We have a fact. Sure. When Mr. Barnes was there. And the merit board found that for three reasons. For him failing to disclose his secondary employment. For him failing to disclose his relationship with his cousin, who he knew was arrested because he was home at the time. As well as him lying and misrepresenting facts to the office. But is the violation having a cousin that got arrested? Or knowing he was a gang member? So the violation is not... It's two pronged. It's one, not reporting that to the sheriff's office. Whether he knew that his cousin was a gang member or not, he did concede in the record that he knew that he had been arrested in the past and he did know that he was arrested at his house. And that was... The record is clear that he never disclosed any of that to the sheriff's office. Okay. But the issue of the gang member affiliation, that was never disclosed. He never admitted to that, right? It's not clear in the record whether he knew that or not. But it is clear that he knew... Well, he said no, he didn't know his cousin was a gang member. Affiliate. Sure. And even if he didn't know his cousin was a gang member, he did know that he had been arrested outside of his house. But what's the violation? If your cousin gets arrested, that violates the code? The violation is not reporting his association with... A person that got arrested? Correct. To the jail. And that kind of goes to then once his cousin was arrested and he affirmatively bid to the portion of the jail where his cousin was incarcerated so that he not only had telephone conversations with him, but also in-person conversations with him while he was working at the jail. And I understand all that, but I'm just getting to the point. Is it a violation of the sheriff's code to have a cousin who gets arrested? No, it is not. And is it a violation of the sheriff's code to post bail, either partial bail or full bail for someone? No. Okay, thank you. Of course. So the violations were not disclosing to the sheriff's office about the arrest, about his secondary employment, and then misrepresenting and lying facts to the Office of Professional Responsibility when they were investigating these issues. And what were the lies? Sure. So he lied about how long he worked secondary employment. Did he say one month and three months? With OPR, he told them one month. I'm sorry, with OPR, I think they told them one to... OPR was one month and then bail bond was one or two months, but in reality he had worked even longer. The telephone calls, he said he spoke with his cousin once, but in reality when the telephone records were reviewed, he had spoken with his cousin 12 or 13 times on the phone. He had also had three-way telephone calls through another individual with his cousin, which is not included with the 12 or 13 calls. And then he also had multiple in-person conversations with his cousin. The sheriff was not aware of his association with his cousin when he bid, so that also put the sheriff at a disadvantage because they may not have granted that bid had they known that his cousin was incarcerated at the time. So the merit-based findings were not against the manifest weight of the evidence, and similarly, Mr. Barnes' termination was not arbitrary, unreasonable, or unrelated to the requirements of service, and his termination involved all three violations, not just one. However, case law is clear that he could be terminated for just one violation. Turning to the retaliatory discharge claims, the Circuit Court properly dismissed those as well. First, this Court should affirm dismissal of the retaliatory discharge claims as a penalty for Barnes' failure to comply with Rules 341 and 342. And second, if this Court considers the retaliatory discharge claims it should affirm the dismissal of both because Mr. Barnes fails to state a claim for either. As explained in the Merit Board Act, the Merit Board is an independent agency, and they're the agency that terminated Mr. Barnes, not the sheriff's office. The sheriff's office does not discharge correctional officers. And the Circuit Court also properly dismissed Mr. Barnes' conspiracy to commit retaliatory discharge claims. Similarly, the Merit Board Act is clear that the sheriff could not and did not terminate Mr. Barnes.  And that's where Plaintiff starts to talk about the, he calls, they call it public policy, and they talk about the state's attorney's office speaking with, at the bail bond proceeding, the state's attorney's office, and then the fact that the state's attorney's office found out the information about the secondary employment and turned over that investigation to the sheriff's office. But they're individuals who testify in public forums in matters that are public record are not protected from their employer learning of this information. There is no, that seems to be what Plaintiff's argument is, but there is no case that says that because they are public matters and there is nothing that would protect that information. So as explained more in my briefing, as is clear, the court should affirm the dismissal of those claims. And lastly, the Merit Board did not violate administrative due process. You heard Mr. Henready speak to some of the Open Meetings Act claims, and there's a slight crossover with some of the issues. But first, Mr. Barnes waived any claims that the Merit Board's supposed errors prejudiced him. Counsel, is it waiver or is it forfeiture? Because again, waiver is a voluntary relinquishment of a known right. He, well, he failed to really address these arguments in his opening brief. What do you say it is? I, it may be both because he did not discuss it in the Merit Board and then he didn't properly follow the rules in his brief. So I think it may be both, Your Honor. And Plaintiff also failed to establish an administrative due process violation if you're looking at the arguments that he made. And specifically, you heard Plaintiff and Mr. Henready speak about the Merit Board members and what they needed to do, but it is clear if you look at the affidavits that the evidence and the transcripts were reviewed during the proceedings. So, absolutely. So, unless the Court has any other questions, we will rest on our briefs. Counsel, thank you very much for your presentation. Thank you. Three minutes? Did you say three minutes? I said two, but I'll write three. Your Honors, in response to Apolli's position, in looking at the jurisdictional issue, it is our position that the order that was issued on December 15th of 2020 was not a final and appealable order. In looking at the language of Illinois Supreme Court Rule 304A, it states that if multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more, but fewer than. All of the parties are claimed if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. The December 15th, 2020 order did not include that language. The language was included on the April 21st, 2021 order. I have an April 2021 order. Is that the order? Your Honor, you are correct. Yes, I did misstate that. So the finding in that order, it says this is a final and appealable order. That is not 304A language under our precedence. So the question still remains, at the time of the April 20 order, which is the order you immediately followed up with your notice of appeal, were there any claims still pending, or had they been expired by virtue of your failure to replead within the required time? At the very least, it is our position that the issues that relate to Mr. Barnes' administrative due process claim and the termination as a whole were still pending at the time. All claims related to Mr. Barnes' termination were pending through the issuance of that order. Your Honor, how were they pending if the time had expired for you to replead and you didn't replead them? If I'm understanding what everybody is telling me. It's our position that because that explicit language was not included on the order, that that is what controls. So moving beyond just the jurisdictional issue, again, in talking about Mr. Barnes' knowledge as to Mr. Draper's just involvement in any sort of gang activity, there's no knowledge of that in here. He was terminated for having knowledge of a mere arrest. Arresting somebody and knowing that they are involved in any sort of criminal gang network are two entirely different things. As far as the issue relating to Mr. Barnes' secondary employment, again, that position did not rest on his position at the Sheriff's Office. Additionally, that was not issued in 2016. That was issued a year after. So it should not control in this case as well. Additionally, the inaccuracies that were cited as to the number of phone calls and the length of time relating back to Mr. Barnes' secondary employment are not misrepresentations. They are mere inaccuracies. Those should not be the basis for someone's termination in this case. It's not as if he did not deny that he spoke with him. He admitted that he spoke to his cousin. He admitted that he was arrested at his house. But again, mere inaccuracies as to language of that nature should not be a cause for termination of an officer in this case. Counsel, thank you very much for your presentation here today. And thank you to all the attorneys that are here for a job well done. I want to congratulate you on your arguments that you've made here today. And the case will be taken under advisement, and you will hear from us soon. Before we depart, I'm going to exercise a point of personal privilege here. Our distinguished colleague, Presiding Judge Maureen Conners, is retiring from the court in a few days after a very distinguished career on the bench spanning 34 years. And I remember appearing before her as a baby lawyer at the Fishville Courthouse. I think she was a baby judge and a baby lawyer. But she has served on our court for 12 years and exercised a great distinguished service. And I do want to point out that she had the unenviable task of being our Executive Committee Chair when COVID came out. And Justice Conners, as our Executive Chair, did an excellent job of keeping everything running here under incredibly uncertain circumstances. And for that, we express our thanks. Thank you, Justice Conners.